REDUS *v.* WAGLEY.

4-3531

Opinion delivered October 1, 1934.

*Patterson & Patterson* and *Hill, Fitzhugh & Brizzolara,* for appellant.

*J. L. Shouse* and *S. W. Woods,* for appellee.

McHANEY, J. Appellant sued appellee to recover judgment on a promissory note for $5,000 and accrued interest which appellee had given H. W. Redus in his lifetime. Appellee defended on the ground that he had paid the note and interest on April 19, 1930, by check to the H. W. Redus estate which was delivered to the First National Bank and cashed by it. The facts, briefly stated, are as follows: H. W. Redus, a well-to-do citizen of Harrison, Arkansas, loaned appellee $5,000 in 1921 at 8 per cent. interest. Some time thereafter said Redus became insane, and appellee was appointed guardian of his estate in 1925, said note being a part of the assets of said estate. Interest was paid from time to time and the note kept alive. Stock owned by appellee in the People's National Bank of Harrison was given as collateral to secure said note, and appellee was the bank's president. Said note and other assets of said estate were kept in said bank for safekeeping and collection and credit. Notes, rents, dividends and other assets were collected by the bank from time to time and deposited to appellee's account as guardian of said estate. Later the name of said bank was changed to First National Bank. In 1929 appellee resigned as guardian, and appellant, son of H. W. Redus, was appointed guardian in succession. At that time, all the assets in the hands of appellee were turned over to appellant, including the note in controversy, and at the same time appellant left same in said bank for safekeeping and collection. The account was thereafter handled by the bank just as it had been handled while appellee was guardian. The note in question was made payable at the People's National Bank, later changed to First National. On April 19, 1930, appellee sold all his stock in said bank to A. T. Hudspeth, receiving a draft on a St. Louis bank for $39,075 in payment therefor which he deposited to his credit in the First National of Harrison. After the draft had cleared and on April 23, 1930, he went to the bank, drew his check thereon for $5,800 payable to the order of the

H. W. Redus estate, delivered same to the cashier in payment of said note and interest which was accepted by him as full payment, and was handed his note marked paid, and said collateral. The cashier deposited said money to the credit of H. W. Redus estate, a new account, and not to the credit of C. H. Redus, guardian. On May 19, 1930, the bank applied said money to the payment of two notes held by it against appellant, C. H. Redus and his sister, Mary Redus White, and appropriated same to its own use, claiming authority so to do on a written guaranty executed by H. W. Redus while sane. On this state of facts, the trial court found "that the People's Savings Bank (successor to the First National) had authority to collect the moneys herein involved for the plaintiff, C. H. Redus, as administrator of the estate of H. W. Redus, deceased, and that therefore plaintiff's cause should be dismissed for want of equity." Decree was entered accordingly.

For a reversal of the judgment, appellant makes two contentions: (1) Conceding the bank's authority to collect said note, "the deposit in the bank in the manner and form made on April 23, 1930, was not good payment, and Wagley is liable upon his note"; and (2) that the finding that the bank had authority to collect said note is against the preponderance of the evidence.

We cannot agree with either contention. The note was made payable at the People's National Bank, and it actually made the collection, although its name had been changed to First National Bank. It had been left there for collection and safekeeping by appellant. The deposit of April 23, 1930, "in the manner and form made," was not made by appellee. It was made and credited by the bank acting through its cashier. Appellee was not a stockholder in the bank at that time and, of course, was not its president. He had sold his stock on April 19, and had been paid for it. His stock attached to said note had not been delivered, but it belonged to the purchaser. Appellee paid the bank the amount of his note and interest by check to the H. W. Redus estate. He had no authority to control the bank in the manner it was credited on its books and did not do so. If the bank on May 19 wrong-

fully misappropriated the money, then it would be liable. It, through the Bank Commissioner, was made a party, but its liability was not determined by the trial court. The fact that the check was made payable to the H. W. Redus estate did not prevent the bank from depositing it to the credit of the guardian. Whether the bank had authority to collect the money was a question of fact, and, as we view the evidence, the finding of the court that it did have such authority is not only not against the preponderance thereof, but is supported by the decided weight if not by the undisputed evidence.

Let the decree be affirmed.